**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

KATHERINE CRAIG,

                 *Plaintiff,*

     v.

PRINCETON ENTERPRISES LLC,

                 *Defendant.*

No. 2:16-cv-10027

**COMPLAINT**

## INTRODUCTION

A nine-story, technicolor mural adorns the side of 2937 East Grand Boulevard in Detroit's North End neighborhood. Known as *The Illuminated Mural*, this 100-by-125-foot "flowing watercolor of multicolored paint splatters" is the work of artist Katherine Craig, a recognized member of Detroit's art community.[1] Since its creation in 2009, the piece has become one of the most notable landmarks in the city's vibrant downtown arts scene. The *Detroit Free Press* has called it "[m]aybe Detroit's most drop-dead gorgeous mural."[2] Electric streaks of orange, yellow, and red stream down a vibrant blue background, brightening up the empty, Albert Kahn-designed brick building and catching the attention of drivers on one of Detroit's main thoroughfares.[3] The authors of *Canvas*

---

[1] Paige Pfleger, *What Right Do Muralists Have to the Buildings They Paint On?*, National Public Radio (June 29, 2015), http://n.pr/1SWK5x4.

[2] Mark Stryker, *Detroit Street Art: 35 Must-See Pieces*, Detroit Free Press, August 21, 2015, http://on.freep.com/1LsZKkj.

[3] LoopNet, Auction: 2937 East Grand Boulevard, http://bit.ly/1MPPxvG.

1

*Detroit*, a recent survey of contemporary art in Detroit published by Wayne State University Press, noted that *Illuminated Mural* "challenged the limits of experimental and traditional approaches to street art."[4]

But just five years after the mural's dedication, the redevelopment plans of 2937 East Grand Boulevard's current owner have put the future of Craig's signature achievement in jeopardy. Princeton Enterprises—which is considering either selling the building or redeveloping the property itself—has threatened to destroy or mutilate the mural by, for example, punching windows across the painted façade. Princeton has asked Craig to accept little more than a token sum in exchange for her legal rights to an artwork that took more than a year to conceptualize and create, and that continues to be the most important part of her growing oeuvre.

The Visual Artists Rights Act of 1990 (VARA), however, protects the rights of artists like Craig, safeguarding their works from "distortion, mutilation, or other modification . . . which would be prejudicial to [their] honor or reputation." 17 U.S.C. § 106A(a)(3)(a). It further protects works of "recognized stature"—including murals on buildings in particular—from intentional or negligent "destruction." *Id.* § 106A(a)(3)(B). Princeton's plans threaten Craig's rights under VARA. To protect *The Illuminated Mural* from mutilation or destruction, and thereby ensure the future of her most significant achievement, Craig brings this action for declaratory and injunctive relief.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because

---

[4] Julie Pincus and Nichole Christian, *Canvas Detroit* 41 (2014).

this action arises under the Visual Artists Rights Act (VARA), 17 U.S.C. § 106A, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

2.      Venue is proper in the Eastern District of Michigan under 28 U.S.C. §§ 1391(b)(1) and (2) because the defendant resides in this district, the events or omissions giving rise to the claim occurred in the district, and the property that is the subject of the action is situated in this district.

## PARTIES

3.      Plaintiff Katherine Craig is a well-regarded visual artist based in Detroit, Michigan, and "the author of a work of visual art" under 17 U.S.C. § 106A. Craig, who also goes professionally by the name Katherine Ann Persicone, is the creative force behind *The Illuminated Mural*—she conceptualized, designed, and executed the work. After winning competitive funding from the College for Creative Studies' community + public arts: Detroit (CPAD) program for her proposal, Craig spent a year planning and creating the mural at 2937 East Grand Boulevard. The work has become one of her best-known pieces, and she continues to receive commissions and other opportunities based on the stature of the mural in Detroit's arts community. She has a vested interest in ensuring the protection and survival of this significant piece.

4.      Defendant Princeton Enterprises, LLC (Princeton) is a limited liability corporation with offices at 2550 Telegraph Road, Suite 200, Bloomfield Hills, Michigan, 48302. Princeton is the current owner of the building at 2937 East Grand Boulevard, and thus controls the fate of *The Illuminated Mural*. Princeton, which is actively considering redeveloping the property or selling it for that purpose, has threatened to destroy or

otherwise mutilate the mural.

## STATUTORY BACKGROUND

5.      Congress passed the Visual Artist Rights Act (VARA) in 1990, as an amendment to the Copyright Act. VARA extends to visual artists the legal protection of their moral rights of attribution and integrity. 17 U.S.C. § 106A. It defines a work of visual art as "a painting, drawing, print, or sculpture, existing in a single copy," or "in a limited edition of 200 copies or fewer." *Id.* § 101.

6.      Since 1990, artists have had the right to protect their works from "any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation." *Id.* § 106A(a)(3)(A).

7.       Works of "recognized stature" are further protected from "destruction," whether "intentional or grossly negligent." *Id.* § 106A(a)(3)(B).

8.      The Act's protection expressly extends to permanent murals—that is, to works of recognized stature that have been "incorporated in or made part of a building in such a way that removing the work form the building will cause the destruction, distortion, mutilation, or other modification of the work." *Id.* § 113(d)(1)(A). For murals painted on buildings after VARA's enactment in 1990, this protection shall apply unless the artist and the building owner have executed a "written instrument" that "specifies that installation of the work may be subject to destruction, distortion, mutilation, or other modification, by reason of its removal." *Id.* § 113(d)(1)(B).

## FACTUAL BACKGROUND

**A.      Katherine Craig's creation of *The Illuminated Mural***

9.     Katherine Craig is a recognized member of Detroit's growing arts scene. She grew up in the city's underground art community, completed her undergraduate degree in art at the College for Creative Studies, and received a Master of Fine Arts degree from the prestigious Cranbrook Academy of Art (ranked by *U.S. News & World Report* as one of the top ten graduate art programs in the United States).[5] Craig's artwork has been featured in numerous exhibitions at both old and new Detroit art institutions, including the Cranbrook Art Museum, the Red Bull House of Art, and Inner State Gallery.[6]

10.     Craig embarked on *The Illuminated Mural* project in 2009, as she looked for opportunities to transform the work she had done with human-scale painting and apply it to the larger canvas of the city of Detroit. She was particularly attracted to the vibrant, changing North End neighborhood, and presented her proposal for a mural to local community groups.

11.     To help turn her vision into reality, Craig sought funding for the project in a competitive grant-making process run by the College for Creative Studies' community + public arts: Detroit (CPAD) program. CPAD chose her proposal from among 50 finalists, awarding her $33,000 for the completion of the project.[7] Though Craig received funding to cover the costs of the project, she was not commissioned or hired to complete it; the artwork's conception and execution were entirely her own.

---

[5] *Best Fine Arts Programs*, U.S. News & World Report, http://bit.ly/PUFgJb.

[6] Curriculum Vitae, *available at* http://bit.ly/1mBBKUa (last accessed Jan. 4, 2015).

[7] Ryan Patrick Hooper, *Blinded by the Arts*, Detroit Metro Times, June 16, 2014, http://bit.ly/1S0G8t6.

12.     As part of the grant process, Craig agreed to take steps to ensure the work's longevity. She promised to gain permission from with the chosen site's owners, and secure insurance for the piece.

13.     After Craig won the grant in 2009, she embarked on the process of designing and securing a specific location for her proposal. Craig scouted out potential properties in the area and approached then-owner Boydell Development Corporation about the possibility of using the side of the vacant 2937 East Grand Boulevard building.

14.     That year, Craig signed a contract with Boydell for the mural, which, the final agreement explained, was "intended to be long lasting for the Northend community." The company agreed that the mural would "remain on the building for no less than a ten years time period." Craig never "expressly agreed" to a waiver of her lifetime rights of attribution and integrity under the Visual Artists Rights Act, 17 U.S.C. § 106A(e)(1), including her right to protect the work from "destruction," as well as "distortion, mutilation, or other modification," 17 U.S.C. § 106A(a)(3).

15.     Craig also moved into the building as a tenant, signing a lease with Boydell to rent out a space on the first floor of the building for use as her studio. Ultimately Craig used the space as the first home of the new North End Studios, and invited seven other artists to join her there.[8]

16.     Community engagement was a central part of Craig's creative process, and she used her home base at 2937 East Grand Boulevard to involve the neighborhood in the

---

[8] Hooper, *supra*.

creation of its new, landmark mural.[9] She rented a crane and purchased paint and other equipment from local businesses.[10]

17.    Craig describes her work as "process based," using color and objects to explore the meaning of contemporary American culture and urban landscapes. Craig is part of a growing number of Detroit-based artists involving the community and cityscape in their work. As Craig has reflected, the mural's "abstract explosions of paint spatters and cross-hatching" create a sense of "action and movement"—a comment on qualities that, in her view, are central to the changing North End neighborhood.[11]

18.    To create *The Illuminated Mural*, Craig first painted the entire wall an electric blue, providing a clean, vibrant canvas on the nine-story building. She then used a variety of techniques to achieve the signature "bleeding rainbow" effect, eventually laying down more than 100 gallons of paint.[12] She poured paint from the roof of the building, allowing the colors to "drip and fade together."[13] She repurposed a number of unexpected everyday objects—from fire extinguishers to salad-dressing bottles[14]—to spread the paint across the building's wide wall. These mixed application techniques, inspired by artists ranging from Jackson Pollock to Helen Frankenthaler, allowed the colors to blend together in unique, complex ways.

19.    The mural is a large-scale painting that covers the side of a nine-story

---

[9] Pincus & Christian, *supra*, at 42.

[10] Hooper, *supra*.

[11] Kelli B. Kavanaugh, *New Northend Mural 'Illuminates' E. Grand Blvd.*, Model D Media, November 17, 2009, http://bit.ly/1R83DQV.

[12] Pincus & Christian, *supra*, at 41.

[13] *Id.*

[14] Theresa Vargas, *A Distressed Canvas in Detroit*, Washington Post, Sept. 8, 2009, http://wapo.st/1S0GrUH.

building. The mural was painted directly on the brick in a series of complex layers. It cannot be feasibly removed or relocated; it has been "incorporated" into the building, and by definition "removing the work from the building will cause the destruction, distortion, mutilation, or other modification of the work." 17 U.S.C. § 113(d)(1)(A). An image of the mural is reproduced below:



**B.** ***The Illuminated Mural* receives local and national recognition.**

20.     *The Illuminated Mural* has attracted both local and national artistic attention since its dedication in 2009. The *Detroit Free Press* included *The Illuminated Mural* in a 2015 guide to the city's best street art, calling it "maybe Detroit's most drop-dead gorgeous mural."[15] The work was also featured in *Canvas Detroit*, a study of contemporary artwork in the city published by Wayne State University Press. "Craig's

---

[15] Stryker, *supra*.

mural challenged the limits of experimental and traditional approaches to street art," authors Julie Pincus, a graphic designer, and Nichole Christian, a journalist, reflected. "Anyone who has glimpsed her first major work can understand how Craig comes to be mentioned beside Grand Boulevard's creative titans."[16] It has been featured nationally in the documentary "Detroit Lives," from Vice Media,[17] and the music video for "Come Fly Away," by the English-Irish singer Maverick Sabre.[18] In short, the piece is a work of "recognized stature." 17 U.S.C. § 106A(a)(3)(B).

21. The mural served as an opening statement to the art world for Craig, who also works under the name Exactly Hi-Tops. The positive reception of *The Illuminated Mural* led the College for Creative Studies to add Craig to its CPAD New Urban Places Artist Roster. Detroit community groups use this list, which the school curated through a competitive application process, to help choose public artists for future projects in neighborhoods throughout the city. *The Illuminated Mural*'s continued existence is central to maintaining Craig's stature as an artist, and the mutilation or destruction of the work would harm her reputation.

22. Craig has received growing praise and support from the Detroit arts community—including curators and funders—since the mural's unveiling. For example, representatives from the JP Morgan Chase Foundation, who saw the successful reception of the mural at 2937 East Grand Boulevard, awarded her a major grant to complete

---

[16] Pincus & Christian, *supra*, at 41.

[17] *Detroit Lives* (Vice Media 2010), http://bit.ly/1mwtJR7.

[18] Maverick Sabre, *Come Fly Away* on *Innerstanding* (Mercury Records 2015), http://bit.ly/1Fjrrg3.

another mural in the North End neighborhood.[19] The 2012 Detroit Design Festival featured a mural she painted with funding from the Better Blocks Project.[20] Since the mural's unveiling, she has exhibited throughout the region, including at the Cranbrook Art Museum, Inner State Gallery, and Red Bull House of Art.[21]

23.     In 2012, Craig applied for, and was granted, copyright protection for *The Illuminated Mural* from the United States Copyright Office.[22] As a result, she continues to see revenue from the work, as several publications have paid Craig for the right to use an image of the mural. At that time, Craig's work was recorded with the Visual Arts Registry, establishing that she is the "author of a work of visual art that has been incorporated in or made part of a building." 17 U.S.C. § 113(d)(3).

## C.    Princeton Enterprises threatens *The Illuminated Mural*'s future.

24.     Just five years after the mural's unveiling, Princeton Enterprises' redevelopment plans have put the future of Craig's copyrighted mural at risk. The building at 2937 has changed hands several times since Craig signed the initial papers with Boydell. An Ann Arbor-based investor purchased the property for $270,000 in 2012. Craig, who at the time was still renting the ground floor of the building for the use of North End Studios, found out when a knock on the studio door informed her of her new landlord. Shortly thereafter, Craig moved her studio to another location in the

---

[19] Curriculum Vitae, *supra*.
[20] John Monaghan, *Detroit Design Festival Features Art Exhibits, Theater, Lectures, More*, Detroit Free Press, Sept. 17, 2013, http://bit.ly/1kGC6HL.
[21] Curriculum Vitae, *supra*.
[22] *Illuminated Mural*, U.S. Copyright Registration No. VA 1-823-167 (registered Mar. 14, 2012).

neighborhood. She also provided the owners with paperwork noting her copyright on the mural.

25.     Princeton Enterprises purchased the building in January 2015 for $950,000. [23] Princeton has considered redeveloping the property into apartments, condominiums, or office space, and has threatened to destroy or mutilate the mural (by, for example, punching holes in the face to make windows).

26.     The company continues to weigh the options of either redeveloping the property itself or selling it for that purpose. This summer, it put the building up for auction. During the auction, a listing company described the 73,000-square-foot building as "ideal for a variety of uses, including loft or apartment conversions."[24] Though the building was not sold at the time, the future of Craig's work remains in danger.

27.     Given the rapid redevelopment of Detroit—including the building of a rail line linking downtown Detroit to the North End—it is likely that the building will be redeveloped in the near future, whether Princeton ultimately maintains ownership or decides to sell. In April 2015, veteran Detroit commentator and former *Free Press* editor Bill McGraw called the area around the building "Detroit's next hot neighborhood."[25] As the auction listing in the summer of 2015 noted, the empty building is centrally located, in close proximity to several of "Southeast Michigan's most prominent anchor institutions." These hubs of revitalization include Wayne State University, Henry Ford

---

[23] Kirk Pinho, *Building with 'Bleeding Rainbow' Mural in Milwaukee Junction Up for Auction . . . for Now*, Crain's Detroit, June 3, 2015, http://bit.ly/1TAvXZQ.

[24] *Id.*

[25] Bill McGraw, *Detroit's Next Hot Neighborhood Is Hiding in Plain Sight*, Bridge Magazine, Apr. 2, 2015, http://bit.ly/1DA5wyk.

Health Systems, and the New Center commercial district.[26]

28.      Princeton has reached out to Craig, offering to pay her a small, token sum of money in exchange for her rights to the mural. The company has not represented that it plans to respect the integrity of Craig's work under VARA in any of its own potential construction plans. Nor has the company represented that it will communicate the VARA protections for the mural as part of any sale agreement with potential buyers.

29.      Princeton has repeatedly threatened Craig with outright or partial destruction of *The Illuminated Mural* as it attempts to convince her to sign away her rights under VARA. Already, large parts of the mural have begun to chip off as a result of Princeton's neglect of the artwork on its property, and Princeton has made plain its plans to sell the building for redevelopment.

## CLAIM FOR RELIEF
### (Visual Artists Rights Act and Declaratory Judgment Act)

30.      *The Illuminated Mural* is a painting that constitutes a "work of visual art" as defined by 17 U.S.C. § 101. Craig holds a copyright for *The Illuminated Mural*, and the work is thus a copyrightable subject matter.

31.      *The Illuminated Mural* has been the subject of public acclaim since it was dedicated in 2009, and is therefore a work of "recognized stature" under VARA. 17 U.S.C. § 106A(a)(3)(B).

32.      Craig's reputation as a mural artist, both in the Detroit and national arts community, will be irreparably harmed if her most notable work is distorted, mutilated,

---

[26] LoopNet, Auction: 2937 East Grand Boulevard, http://bit.ly/1MPPxvG.

modified, or destroyed without her consent. The destruction of *The Illuminated Mural* would be "prejudicial" to Craig's "honor or reputation." 17 U.S.C. § 106A(a)(3)(A).

33.     Craig has not executed or signed any written statement waiving her rights under the Visual Artists Rights Act or allowing her work to be in any manner destroyed, distorted, mutilated, or modified through removal. 17 U.S.C. § 106A(e), § 113(d)(1)(B).

34.     Craig has the right under 17 U.S.C. § 106A(a)(3) to prevent the destruction, distortion, mutilation, or modification of *The Illuminated Mural*.

35.     Because Princeton Enterprises has threatened and continues to threaten to violate Craig's rights under VARA, there is an actual controversy between the parties within this Court's jurisdiction and a need for this Court to declare the rights and legal relations of the parties under VARA.

36.     Craig has no other adequate remedy at law.

## REQUEST FOR RELIEF

The plaintiff respectfully requests that this Court:

A.     Declare that the plaintiff has the right under the Visual Artists Rights Act to prevent any intentional or negligent destruction, distortion, mutilation, or other modification of *The Illuminated Mural* for a period consisting of her individual lifetime;

B.     Grant an injunction barring the defendant, its agents, attorneys, and employees, and all those acting in concert with them, from taking any action to alter, deface, modify, mutilate, or destroy *The Illuminated Mural*, and requiring them to disclose the legal status of the mural to all potential buyers of 2937 East Grand Boulevard;

13

C.      Award the plaintiff her reasonable costs, expenses, and attorney's fees;

D.      Grant the plaintiff all other appropriate relief.

January 5, 2016                                     Respectfully submitted,


                                                   *s/ Deepak Gupta*
                                                   DEEPAK GUPTA
                                                   GUPTA WESSLER PLLC
                                                   1735 20th St., NW
                                                   Washington, DC 20009
                                                   (202) 888-1741
                                                   *deepak@guptawessler.com*

                                                   *s/ Amy E. Keller*
                                                   EDWARD A. WALLACE
                                                   AMY E. KELLER, P74015
                                                   WEXLER WALLACE LLP
                                                   55 West Monroe St., Suite 3300
                                                   Chicago, IL 60603
                                                   (312) 346-2222
                                                   *eaw@wexlerwallace.com,*
                                                   *aek@wexlerwallace.com*

                                                   *Counsel for Plaintiff*